UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE LARNER,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

No. 13-11464

District Judge Terrence G. Berg

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

    Plaintiff Michelle Larner ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

**I.  PROCEDURAL HISTORY**

    Plaintiff applied for DIB on December 16, 2010, alleging disability as of February 28, 2008 (Tr. 124). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 17, 2011 in Mount Pleasant, Michigan before Administrative

Law Judge ("ALJ") Kathleen Eiler (Tr. 29). Plaintiff, represented by attorney Daniel Pollard, testified, (Tr. 33-50), as did vocational expert ("VE") James Lozer (Tr. 51-55). On January 27, 2012, ALJ Eiler found Plaintiff not disabled (Tr. 24).

On February 2, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-6). Plaintiff filed suit in this Court on April 1, 2013.

## II. BACKGROUND FACTS

Plaintiff, born September 9, 1971, was 40 at the time of the administrative decision (Tr. 24, 124). She completed two years of college and worked previously as an "office professional" (Tr. 142-143). She alleges disability due to sarcoidosis, fibromyalgia, depression, anxiety, and migraines (Tr. 142).

### A. Plaintiff's Testimony

*Plaintiff's counsel reported that the correct disability onset date was February 28, 2009 rather than February 28, 2008 as stated on the DIB application* (Tr. 33).

Plaintiff offered the following testimony:

She had not worked since the end of February, 2009 due to anxiety, depression, and fibromyalgia (Tr. 34). Due to shaking hands as a result of Effexor and Klonopin use, she was unable to keep her hands on a fingerboard (Tr. 34). She isolated herself due to depression and her inability to get along well with others (Tr. 35). Her physical problems were precipitated by erythema nodosum, a condition causing joint swelling (Tr. 35). After the condition did not respond to steroid treatment, she was referred to a rheumatologist who diagnosed her with fibromyalgia (Tr. 37).

She experienced anxiety and depression prior to the onset of the physical problems, but was able to hold long-term employment because her job allowed her to work in "relative isolation" (Tr. 37). She experienced migraine headaches up to two times a day, "continuous" hand shaking, and varying degrees of pain as a result of fibromyalgia (Tr. 38). She took Klonopin, Effexor, and Vitamin B12 daily (Tr. 38). In November, 2008, she attempted suicide by taking an overdose of Darvocet (Tr. 38).

Due to health insurance restrictions, she was unable to receive treatment from specialists for her physical problems (Tr. 41). She no longer experienced the condition of sarcoidosis (Tr. 44). She previously received counseling (Tr. 45). She lived with her parents (Tr. 46). She held a valid driver's license but drove rarely due to anxiety (Tr. 46-47). She had a dog which she took care of with the help of her father (Tr. 47). She checked her email daily and kept in touch with her friends on Facebook (Tr. 48). She denied eating out, going to movies, or attending church (Tr. 48-49). Her parents prompted her to perform personal care tasks and attend doctors' appointments (Tr. 49). She experienced trouble balancing and climbing stairs (Tr. 50). She spent most her daytime hours sleeping (Tr. 50).

**B. Medical Records**[1]

---

[1] Records significantly predating the alleged onset date and current records unrelated to the benefits claim have been reviewed in full but are omitted from the current discussion.

### 1. Treating Records

April, 2008 imaging studies of the chest were negative for abnormalities (Tr. 305). In November, 2008, Plaintiff sought treatment for joint swelling (Tr. 225). January, 2009 notes state that "anti-inflammatories" did not improve the condition (Tr. 225). In February, 2009, rheumatologist Harris W. Weaver, M.D. noted diffuse tenderness "suggestive of a fibromyalgia type problem" (Tr. 212). He noted that he could not exclude "a sarcoidosis-related inflammation or other inflammatory disorder" (Tr. 212). The same month, Shahzad Manawar, M.D. noted that the sarcoidosis was not accompanied by pulmonary symptoms but included "arthralgias" of the elbows, knees, hands, and wrists (Tr. 317). May, 2009 treating notes by Mark Skory, D.O. state that Plaintiff attempted suicide in November, 2008 but currently denied thoughts of suicide (Tr. 279, 281).

July, 2010 physical therapy discharge notes state that Plaintiff denied discomfort (Tr. 255). She reported "90 percent" improvement, noting that she had no problems sitting, was able to lift a laundry basket, and experienced improved sleeping patterns (Tr. 255). A "psychosocial" intake assessment created the same month, states that she was subject to emotional abuse during her previous marriage, but was now in a new, non-abusive relationship (Tr. 259). Plaintiff reported that she would receive unemployment benefits for another five months and was not seeking work due to anxiety (Tr. 260). She indicated that depression, anxiety, anger control, mood changes, and hostility were "serious" problems and lack of energy, low self esteem, social withdrawal, and spousal problems were "severe" (Tr. 262). She reported a 2008 suicide attempt (Tr. 263). She was diagnosed with bipolar

disorder and assigned a GAF of 50[2] (Tr. 267). September, 2010 treating records by Shahzad Manawar, M.D. state that symptoms of sarcoidosis had resolved (Tr. 313).

In February, 2011, Dr. Skory found that Plaintiff experienced the conditions of anxiety, fibromyalgia, migraine headaches, and sarcoidosis, opining that Plaintiff was unable to lift more than five pounds due to symptoms of fibromyalgia (Tr. 337). The following month, S. Nagarkar, M.D. performed an intake psychiatric evaluation, noting Plaintiff's claim of ongoing stress due to abuse by her former husband (Tr. 338). She also reported problems interacting with her parents and had declared bankruptcy (Tr. 338). Plaintiff indicated that she tired easily and worried excessively (Tr. 338). She reported that she was currently in a good romantic relationship (Tr. 339). Dr. Nagarkar diagnosed Plaintiff with dysthymia, combined with a generalized anxiety disorder (Tr. 339). He assigned her a GAF of 55[3] with fair insight and judgment (Tr. 339). Dr. Nagarkar's April, 2011 medication review states that Plaintiff was doing better and exhibited a euthymic mood (Tr. 360). In November, 2011, Dr. Nagarkar found that Plaintiff experienced moderate limitations in interacting with supervisors and coworkers, carrying out complex instructions, dealing with the public, maintaining focus for two-hour increments, and dealing with workplace stress (Tr.

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*")(4th ed.2000).

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 32.

365). The same month, Ruth Kilburn-Doxey, M.A. (noting that she had counseled Plaintiff for one month) found the presence of mostly marked psychological limitations with extreme limitations in withstanding workplace stress (Tr. 366-367). Also in November, 2011, Dr. Skory opined that Plaintiff was unable to lift even 10 pounds or stand or walk for two hours in an eight-hour work day (Tr. 368).

### 2. Non-Treating Records

In December, 2010, Daniel Dolanski, D.O. completed a Disability Determination Explanation on behalf of the SSA, concluding that the treating records supported a non-disability finding (Tr. 57-68). He found mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace (Tr. 62). In support of his determination, Dr. Dolanski noted that Plaintiff was able to carry a laundry basket, walk half a mile, and did not seek regular treatment for either fibromyalgia or migraine headaches (Tr. 63). He found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 64). He found further that Plaintiff should be limited to occasional climbing, balancing, stooping, kneeling, and crawling but found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 65). As to mental limitations, he found that Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining concentration for extended periods, sustaining an ordinary routine; and getting along with coworkers (Tr. 66). Dr. Dolanski found that Plaintiff was capable of performing "simple and repetitive tasks on a sustained

basis" (Tr. 66).

### 3. Material Submitted After the January 27, 2012 Administrative Opinion[4]

Dr. Nagarkar's records state that in March, 2011, Plaintiff completed a self assessment, reporting that she shopped for groceries, read books about vampires and emailed others but saw friends in person on a rare basis (Tr. 409-410). In March, 2011, Marc D. Davis, M.D. stated that Plaintiff exhibited a normal mood and affect with normal behavior (Tr. 391). He noted that Plaintiff's anxiety and panic disorder was "well controlled" (Tr. 382). In January, 2012, Plaintiff reported pain upon twisting but denied psychological symptoms (Tr. 417). Dr. Nagarkar's April, 2012 progress notes state that Plaintiff's disability claim had been denied (Tr. 414). Dr. Davis' September, 2012 treating records state that Plaintiff's depression and panic disorder were "well controlled" with medication (Tr. 427).

### C. Vocational Testimony

VE Lozer classified Plaintiff's former work as a secretary as skilled and exertionally sedentary (as generally performed in the national economy) but exertionally *medium* as described by Plaintiff[5] (Tr. 52). The ALJ then posed the following question to the VE, taking

---

[4]Evidence duplicating the information considered by the ALJ has been omitted from the present discussion (Tr. 369-379, 415-416).

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

into account Plaintiff's age, education, and work experience:

> [A]ssume this person can perform work at the light exertional level. She can occasionally climb, balance, stoop, crouch, kneel, or crawl. She can occasionally push, pull, or reach overhead with her bilateral upper extremities. She can perform simple, routine, repetitive tasks in a low-stress environment, meaning no more than occasional changes in a routine work setting; and no high-paced production rate pace work. She can occasionally interact with supervisors and coworkers, but should never interact with the general public. Could this person perform the claimant's past work? (Tr. 53).

The VE responded that given the hypothetical limitations, the above-limited individual would be unable to perform any of Plaintiff's past relevant work but could perform the light, unskilled work of a custodian (5,000 positions in the State of Michigan); office clerk (11,000); and dishwasher (5,000) (Tr. 54). She stated that if the individual were limited to sedentary rather than light work, it would allow for the work of a sedentary office clerk (3,000); bookkeeper (2,000); and security guard monitor (1,000) (Tr. 54). She testified that if the individual also required "three unscheduled breaks each day lasting 60 minutes each," all work would be precluded (Tr. 54).

### D. The ALJ's Decision

Citing the medical and therapy records, ALJ Eiler found that Plaintiff experienced the severe impairments of sarcoidosis, fibromyalgia, migraines, depression, and anxiety but that

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). As to the mental impairments, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and "concentration, persistence, or pace" (Tr. 17). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [She] can only occasionally climb, balance, stoop, crouch, kneel, or crawl. She can occasionally push/pull or reach overhead with her bilateral upper extremities. She can perform simple, routine, repetitive tasks in a low stress environment, meaning no more than occasional changes in a routine work setting and no high-paced production rate pace work. The claimant can occasionally interact with supervisors and coworkers, but she should never interact with the general public (Tr. 18).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the work of a custodian, office clerk, and dishwasher (Tr. 23-24).

The ALJ discounted Plaintiff's allegations that she was unable to perform even unskilled work. She cited medical records showing that the condition of sarcoidosis was stable and that Plaintiff did not experience respiratory symptoms (Tr. 19). The ALJ noted that Plaintiff obtained good results from physical therapy (Tr. 19). She observed that despite the alleged psychological impairments, the treating records did not show that the conditions were disabling or created greater limitations than those found in the RFC (Tr. 20).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### Plaintiff Has Not Established That a Remand Is Warranted

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief* at 6-12, *Docket #8* (citing Tr. 53). He contends that the omission of critical psychological and physical limitations from the hypothetical question invalidates the Step Five finding that she was capable of a significant range of work. *Id.* at 6 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Plaintiff contends, in effect, that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination. The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects

of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [6]

Substantial evidence amply supports both the credibility determination and by extension, the ALJ's choice of hypothetical limitations. The ALJ supported the rejection of Plaintiff's physical limitations by citing physical therapy records showing 90 percent improvement in symptoms, the ability to lift a laundry basket, and no limitations in sitting (Tr. 19). She noted that Plaintiff was able to drive to the store, shop, read, and interact with others online (Tr. 21). She cited Dr. Nagarkar's treating notes stating that her mental status was "within normal limits" (Tr. 20). See *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). Because the ALJ's credibility determination was well supported and explained, she did not err in excluding Plaintiff's unsupported claims from the hypothetical limitations.

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff's brief also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion, much less a fact-based explanation of how the ALJ erred in the analysis of the treating records.[7] Plaintiff does not dispute or even cite the ALJ's rejection of "disability" opinions by Drs. Nagarkar and Skory or counselor Kilburn-Doxey. Further, my own review of the transcript shows that the ALJ's rejection of these opinions was well articulated. She noted that Dr. Nagarkar's "checklist" assessment showing moderate psychological limitation did not include a definition of the term "moderate" and was inconsistent with his own treating records showing psychological improvement (Tr. 21, 365). Moreover, Dr. Nagarkar's findings do not significantly deviate from the ALJ's determination that Plaintiff experienced moderate concentrational limitation. The ALJ rejected Dr. Skory's opinion that Plaintiff was incapable of lifting even 10 pounds or standing or walking for two hours, noting it was inconsistent with the physician's treating records containing only "limited objective findings" (Tr. 21-22, 368). The ALJ noted that Kilburn-Doxey's findings of marked and extreme psychological limitations were based only on a six week relationship and contradicted other portions of the record showing fairly high level of psychological functioning (Tr. 22, 366-367).

---

[7] Numerous judges of this Court have criticized Plaintiff's counsel for his penchant for raising generalized but undeveloped arguments lacking citation to or support in the record, effectively "inviting the Judges of this District to formulate arguments and search the record on his clients' behalf...." *Fielder v. Commissioner of Social Sec*., 2014 WL 1207865, *1, fn. 1 (E.D.Mich. 2014)(Rosen, C.J.)(citing cases). In this case, we are faced with yet another argument that is long on boilerplate recitations of well-established law and short on factual support.

Finally, although Plaintiff has not cited the material she submitted after the ALJ's decision, I have considered this evidence in making my recommendation (Tr. 369-43). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Plaintiff has not provided "good cause" for the tardy submission of the newer material. Moreover, a portion of the evidence pertains to Plaintiff's condition subsequent to the January 27, 2012 administrative decision and as such, is intrinsically irrelevant to whether she was disabled on or before that date. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988)(records related to a claimant's condition *after* the administrative decision not "material" to the ALJ's findings). If Plaintiff believes that she can establish disability after the date of the decision, her remedy would be to apply for benefits for the later period.[8] *Id.* Because Plaintiff has not shown that the newer records would be likely to alter the ALJ's decision, a remand on this basis is not warranted.

In closing, I note that my recommendation to uphold the Commission's decision should not be read to trivialize Plaintiff's physical and mental conditions. Still, the ALJ's determination that she was capable of performing a significant range of work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

---

[8] However, the newer records suggest, if anything, that her mental condition improved after the date of the decision.

## VI. CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 10, 2014  s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 11, 2014, electronically and/or by U.S. Mail.

                                                  s/Michael Williams
                                                  Case Manager for the
                                                  Honorable R. Steven Whalen